**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Shawn Dale Moore,

               Plaintiff,

v.

Charles L. Ryan, et al.,

               Defendants.

No. CV-18-00859-PHX-ROS

**ORDER**

Plaintiff Shawn Dale Moore is an inmate at the Arizona Department of Corrections ("ADCRR"). Plaintiff brought this action in 2018 against several employees of ADCRR (collectively, "Defendants"), alleging five separate violations of Plaintiff's Eighth Amendment rights. The Court granted summary judgment in favor of Defendants Nielson and Barraza on one claim but denied summary judgment as to the remaining four claims involving the Defendants listed below. (Doc. 194). In the remaining four claims set for trial, Plaintiff alleged:

    (1) Defendants Reynolds and Sandoval used excessive force causing injuries to Plaintiff's wrist when attempting to place him in one pair of handcuffs, instead of using an alternative cuffing method (Count I);

    (2) Defendants Reynolds, Sandoval, Montano, and Anderson denied Plaintiff medical treatment for injuries sustained from the handcuffing incident in Count I involving Defendants Reynolds and Sandoval (Count II);

    (3) Defendants Espinosa, Thomas, and Akin used excessive force causing injuries by repeatedly punching Plaintiff in the face (Count III); and

(4) Defendants Days and Munley violated his constitutional rights by knowingly disregarding that Plaintiff did not have adequate clothing, bedding, towels, or hygiene products (Count IV).

The case proceeded to a jury trial on these claims. Pursuant to Fed. R. Civ. P. 50, Defendants moved for judgment as a matter of law after both Plaintiff's case-in-chief and the close of evidence, which the Court twice denied. On June 28, 2024, the jury found liability as follows:

(1) Defendants Reynolds and Sandoval each liable on the first and second claims for $7,500.00 in compensatory damages and $20,000.00 in punitive damages;

(2) Defendants Espinosa and Akin each liable on the third claim for $7,500.00 in compensatory damages and $20,000.00 in punitive damages; and

(3) Defendants Days and Munley each liable on the fourth claim for $5,000.00 in compensatory damages.

The Clerk of Court entered judgment consistent with the jury's verdict on July 26, 2024. (Doc. 381). Defendants have brought a renewed Motion for Judgment as a Matter of Law, or alternatively, for a New Trial or Remittitur under Fed. R. Civ. P. 50(b) and 59(e) (Doc. 390, "Mot."). And Plaintiff brings a Motion for Attorneys' Fees and Costs (Doc. 389). For the reasons set forth below, the Court will grant the Motion for Judgment as a Matter of Law as to Defendants Akin, Days, and Munley only and deny the alternative Motions for New Trial and Remittitur. Additionally, the Court will deny the Motion for Fees and Costs without prejudice, to be refiled within 14 days consistent with the reduced judgment award.

## FACTUAL BACKGROUND

At trial, the following evidence relevant to claims against each Defendant was presented. All such evidence, including testimony, is that of Plaintiff's unless otherwise noted.

## I.     Defendants Reynolds and Sandoval

In May 2016, Plaintiff was classified as a maximum custody prisoner and housed in ASPC-Florence, Central Unit.  (Doc. 382, "TR1" at 97–98).  Plaintiff is 6'2" and weighed approximately 315 pounds during the relevant time period.  (*Id.* at 101).  As a heavy-set man, Plaintiff had a Special Needs Order ("SNO") from the outset of his confinement for alternative cuffing due to pain in his shoulders and wrists when placed in a single pair of handcuffs.  (*Id.* at 100).  The SNO permitted Plaintiff to be handcuffed in one of two ways: (1) using side restraints and belly chains that wrap around his waist or (2) "double cuffing," *i.e.*, using two single pairs of handcuffs intertwined to create a wider span.  (*Id.* at 99–100).  Plaintiff's SNO expired in April 2017.  (*Id.* at 102).  Defendant Sandoval, a sergeant at ADCRR, thereafter informed Plaintiff he needed to get his SNO renewed.  (*Id.* at 118).  On May 18, 2024, Plaintiff requested a renewal of the SNO, but never received a response. (*Id.* at 102–03).  Despite having an expired SNO, from May 18 to May 24, 2017, Plaintiff was restrained by officers—including Defendants Sandoval and Reynolds—using either belly chains or double handcuffs because it was difficult to restrain him using a single pair of handcuffs.  (*Id.* at 103, 106, 118).

On May 24, 2017, Defendant Reynolds, a correctional officer at ADCRR, arrived at Plaintiff's cell to take Plaintiff out for recreation. (*Id.* at 104).  Defendant Reynolds began to restrain Plaintiff using only a single pair of handcuffs.  (*Id.*).  Plaintiff notified Defendant Reynolds of his pending SNO, but Defendant Reynolds told him that without an active SNO, Defendant Reynolds would use the one pair of handcuffs.  (*Id.* at 104–05).  When Plaintiff put his hands through the food port to oblige, Defendant Reynolds attempted to force the single pair of handcuffs onto Plaintiff, which required him to forcefully put his foot on the door to brace himself.  (*Id.*).  As Defendant Reynolds aggressively continued to single cuff Plaintiff, Plaintiff felt a pop in his wrist and shoulder, screamed out, and told Defendant Reynolds he was hurting him.  (*Id.*).  For the next five minutes, Plaintiff tried to fit his hands into single cuffs, all while experiencing excruciating pain.  (*Id.* at 107).  He did not resist because it was difficult to do so with his hands behind his back.  (*Id.* at 108).

A few minutes later, Defendant Sandoval arrived at the scene and inquired about the situation. (*Id.*). Plaintiff explained what happened and asked to get medical attention because he was in serious pain. (*Id.*). Defendant Sandoval told Plaintiff he was going to check on his SNO and with the medical unit. (*Id.* at 109). Plaintiff returned the handcuffs to Defendant Sandoval, and both Defendants Reynolds and Sandoval left. (*Id.*). Plaintiff never received medical attention. (*Id.*). A few hours later, Defendant Reynolds returned with a female officer who was holding a camera. (*Id.* at 109–10). Defendant Reynolds told Plaintiff he needed to submit to single handcuffs again because he was taking him somewhere. (*Id.* at 110). Plaintiff complied, although reluctantly due to the pain he was still experiencing. (*Id.*). Defendant Reynolds once more attempted to force Plaintiff into single cuffs, and Plaintiff felt another pop in his wrist. (*Id.*). This time, he also heard the pop. (*Id.*). Upon hearing the pop, Plaintiff pulled away because the pain was unbearable. (*Id.*). Defendant Reynolds took the handcuffs and shut the food port. (*Id.*). While on camera,[1] Plaintiff again requested medical attention. (*Id.*). Both Defendant Reynolds and the female officer subsequently left without returning. (*Id.*).

That same day, Plaintiff submitted a Health Needs Request ("HNR") to the nurse line. (*Id.* at 111). The HNR, written by Plaintiff, stated,

> I have my hand going numb from when CO II Reynolds, 5644, and Sergeant Sandoval, 10216, try to force my hands in cuffs. Then CO II Reynolds, 5644, and a lady officer came with cameras. CO II Reynolds, 5644, try again to force my hand in cuffs and something popped. Now my hand [*sic*] numb.

(*Id.* at 113). When Plaintiff provided the HNR to the nurse, the nurse did not examine his wrist. (*Id.* at 115).

The following day, on May 25, 2017, Defendant Sandoval arrived at Plaintiff's cell with another female officer and informed him that in order to be taken to medical, Plaintiff

---

[1] On June 12, 2024, the Court granted Plaintiff's motion for spoliation and ordered an adverse jury instruction as to camera footage taken at the time of two incidents that ADCRR failed to preserve. (Doc. 353). The jury instruction related to lost or destroyed evidence stated, "[i]f you find that the Defendants intentionally destroyed or failed to preserve video evidence relevant to Mr. Moore's claims that the Defendants knew or should have known would be evidence in this case, you may infer, but are not required to infer, that this evidence was unfavorable to the Defendants." (Doc. 372 at 42).

would need to submit to a single pair of handcuffs.  (*Id.* at 119).  Plaintiff placed his hand out to be single cuffed again, and—again—the handcuffs did not fit.  (*Id.*).  At this point, Plaintiff experienced pain of ten on a ten-point scale.  (*Id.*).  Plaintiff informed Defendant Sandoval of his pain, but Defendant Sandoval took no action to help Plaintiff.  (*Id.* at 120).

Plaintiff submitted another HNR for the May 25 incident.  (*Id.* at 121).  It stated,

> I need to see medical. I put in an HNR on 5-24-17 about when Sergeant Sandoval and CO II Reynolds tried to force my hands into cuff, which [*sic*] something popped. My hand still don't [*sic*] have all its feeling back. Something is wrong.  Need medical help."

(*Id.*).  When Plaintiff submitted the HNR to the nurse, the nurse never examined his wrist, and Plaintiff was not seen by a medical provider.  (*Id.*).  Plaintiff submitted another HNR.  (*Id.* at 122–23).  When Plaintiff woke up the next morning on May 26, 2017, his wrist was swollen, and his pain level was around a seven to eight on a ten-point scale.  (*Id.* at 123).  Plaintiff asked an unidentified non-party lieutenant for help, and the lieutenant told Plaintiff he better learn how to submit to one pair of cuffs.  (*Id.* at 124).  That day, Plaintiff submitted a fourth HNR, which reiterated his pain and plea for help.  (*Id.* at 125–26).

On May 27, 2017, Plaintiff asked another unidentified non-party officer who came to handcuff Plaintiff for recreation and shower for help with his wrist.  (*Id.* at 127).  The officer, in attempting to help him, told him he would see if he could get Plaintiff two pairs of cuffs.  (*Id.*).  The officer went to Defendant Sandoval who told him Plaintiff cannot leave the cell unless he fits into one pair of cuffs.  (*Id.* at 128).  In desperation, Plaintiff staged a security threat by thrusting his mattress in front of his door to get attention from medical and higher-ranking supervisors.  (*Id.* at 128–30).  A different unidentified non-party lieutenant, who was a higher-ranking supervisor, arrived, double cuffed Plaintiff, and took him to the recreation pen.  (*Id.* at 130–31).  The lieutenant, upon looking at Plaintiff's wrist, told him he definitely needed to see medical.  (*Id.* at 131).  When Plaintiff was finally evaluated by a nurse, he was told his wrist was too swollen for an x-ray but that he would be scheduled for x-rays and his SNO would be renewed for three days.  (*Id.* at 131–32).

## II.     Defendants Espinosa and Akin

On November 13, 2017, Plaintiff was escorted from recreation back to his cell by Defendant Espinosa, a correctional officer at ADCRR, and restrained in a belly chain with his hands cuffed to his sides.  (TR1 at 138).  Prisoner paperwork and grievance forms are placed in a designated area that is accessible to prisoners when they are going to and from the recreation pens, and prisoners can take any necessary forms when they walk by this area.  (*Id.*).  As Plaintiff walked by this area, he grabbed five copies of various grievance, appeals, and supply paperwork forms, in light of his forthcoming grievance filing deadlines.  (*Id.*).  Plaintiff would routinely grab multiple copies of each form from the designated area.  (*Id.*).

On this occasion, however, Defendant Espinosa snatched the forms out of Plaintiff's hand and said that he was only allowed one of each form, even though there was no policy that imposed this limitation.  (*Id.* at 139–40).  Plaintiff pulled back, and Defendant Espinosa, along with two other officers, slammed Plaintiff against the wall.  (*Id.* at 141–43).  One of the officers stuck a taser to the back of Plaintiff's head and neck area and told him to release the forms from his hand.  (*Id.* at 143).  Plaintiff refused.  (*Id.*). Plaintiff was then slammed to the floor and felt knees being dropped on his lower back.  (*Id.*).  After experiencing pain in his back, Plaintiff released the forms to prevent further escalation.  (*Id.* at 144).  Plaintiff testified his pain level was at an eight out of ten.  (*Id.*).  Following the incident, Plaintiff was taken to medical where, instead of being treated for his pain, he was interrogated and told if he did not stop filing grievances, his life in prison would get a lot worse.  (*Id.* at 145).

## III.     Defendants Days and Munley

On March 12, 2018, after an altercation with an officer, Plaintiff was placed in an individual watch pod with only a suicide blanket and a mattress.  (Doc. 383, "TR2" at 55–58).  A day later, on March 13, 2018, Plaintiff was moved to enhanced security where he had only a shirt, a pair of boxers, and a mattress.  (*Id.* at 58).  Plaintiff was without additional clothing for one week, until March 20, 2018.  (*Id.*).  During that week, Plaintiff

went to recreation and showers on three occasions without shoes. (*Id.* at 59). He walked through urine, feces, and semen from other inmates in the shower. (*Id.* at 60). Plaintiff also did not have access to hygiene products such as soap, toothpaste, a toothbrush, shampoo, or deodorant. (*Id.* at 61). Plaintiff spoke to Defendant Munley, a supervising sergeant, numerous times from March 13 to March 20 regarding obtaining clothing, hygiene products, and the remainder of his property. (*Id.* at 61). Each time, Defendant Munley told Plaintiff he would look into it, but Defendant Munley took no action to correct or address the situation. (*Id.*).

On around March 16, 2018, Defendant Days, the deputy warden responsible for the Browning Unit, conducted a tour of Plaintiff's unit. (*Id.* at 65). Defendant Days stopped by Plaintiff's cell, noticing he only had boxers and a t-shirt on, and told him to put his bottoms on. (*Id.*). Plaintiff told her that all he had was boxers and a t-shirt. (*Id.*). Defendant Days told Plaintiff that he should not have altercations with her staff and that she would check on getting his property back. (*Id.* at 66). On March 20, 2018, Plaintiff received shower shows, shoes, two shirts, a pair of pants, shorts, boxer shorts, and socks—but no hygiene products. (*Id.* at 62). As result of not having hygiene products, Plaintiff was unable to shower with soap or brush his teeth. (*Id.* at 63). Plaintiff did not receive the rest of his property, including hygiene products, until March 27, 2018. (*Id.*).

## LEGAL STANDARDS

### I.     Renewed Motion for Judgment as a Matter of Law

Pursuant to Fed. R. Civ. P. 50, district courts may set aside a jury verdict as a matter of law if a reasonable jury would not have had a legally sufficient evidentiary basis to support the verdict. Fed. R. Civ. P. 50(a), (b). A "party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1016 (9th Cir. 2018) (quoting *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003)). "A renewed motion for judgment as a matter of law should be granted if the evidence permits only one conclusion and that conclusion is contrary to the jury's

verdict." *Martin v. California Dep't of Veterans Affs.*, 560 F.3d 1042, 1046 (9th Cir. 2009) (citing *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)). Conversely, a "jury's verdict must be upheld if it is supported by substantial evidence that is adequate to support the jury's findings, even if contrary findings are also possible." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014) (citing *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008)). "In making this determination, the court must not weigh the evidence, but should simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion." *Harper*, 553 F.3d at 1021 (citing *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227-28 (9th Cir. 2001)). The Court must review the evidentiary record "in the light most favorable to the nonmoving party, draw all reasonable inferences in favor of the non-mover, and disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* While reviewing motions for judgment as a matter of law, the Court always remains conscious that the "jury is the 'constitutional tribunal provided for trying facts in courts of law.'" *Id.* (quoting *Berry v. United States*, 312 U.S. 450, 453 (1941)).

## II.    Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In deciding if qualified immunity applies, a court must determine: (1) whether the facts alleged show the defendant's conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 230-32, 235-36 (2009) (holding that courts may address either prong first depending on the circumstances in the particular case).

For a right to be clearly established there does not have to be a case directly on point; however, "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2017)). Clearly established law "must be particularized to the

facts of the case," and "should not be defined at a high level of generality." *White*, 137 S. Ct. at 552 (quotation and citation omitted). A right is clearly established when case law has been "earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017) (citing *White*, 137 S. Ct. at 551). "The Supreme Court has made clear that 'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (quoting *Hope*, 536 U.S. at 741). The question of whether a prison official's conduct was reasonable in light of clearly established law is a "fact specific inquiry." *Castro v. Cnty. of L.A.*, 797 F.3d 654, 688–69 (9th Cir. 2017.) "[T]he defendant's subjective understanding of the constitutionality of his or her conduct is irrelevant." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011) (internal quotation marks and omitted).

### III. New Trial

The Court may grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Recognized grounds for a new trial "include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). The Court "may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000) (citation omitted). Unlike a Rule 50 motion, a district court reviewing a motion for a new trial has "the duty, to weigh the evidence as [the Court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence," where the Court believes "the verdict is contrary to the clear weight of the evidence, or" to prevent a miscarriage of justice. *Murphy v. City of Long Beach*, 914 F.2d

183, 187 (9th Cir. 1990) (quoting *Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 2246, 256 (9th Cir. 1957), *cert denied*, 356 U.S. 968 (1958)). "[E]rroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial." *Id.* (citations omitted).

## IV.    Remittitur

Even where a new trial is not necessary, remittitur may be appropriate if the Court deems a jury verdict grossly excessive or clearly not supported by evidence. *See Snyder v. Freight, Constr., Gen. Drivers, Warehousemen & Helpers, Local No. 287*, 175 F.3d 680, 689 (9th Cir. 1999). If the Court, after viewing the evidence concerning damages in the light most favorable to the prevailing party, determines the damages award is grossly excessive, the Court must give the prevailing party "the option of either submitting to a new trial or of accepting a reduced amount of damage which the court considers justified." *Fenner v. Dependable Trucking Co., Inc.*, 716 F.2d 598, 603 (9th Cir. 1983).

## ANALYSIS

### I.    Renewed Motion for Judgment as a Matter of Law

#### A.  Defendants Reynolds and Sandoval (Counts I and II)

The jury had sufficient evidence to support its finding of liability against Defendants Reynolds and Sandoval and a reasonable juror could have found in favor of Plaintiff.

To prevail on his Eighth Amendment claim for violation of his constitutional rights due to Defendants Reynolds and Sandoval's excessive use of force, Plaintiff must prove by a preponderance of the evidence that (1) Defendants used excessive force in handcuffing him; (2) Defendants acted maliciously and sadistically against Plaintiff for the purpose of causing harm, and not in a good faith effort to maintain or restore discipline; and (3) Defendants' actions in handcuffing Plaintiff caused him harm. To determine whether force was excessive, Plaintiff may show (1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response ("*Hudson* Factors"). *Furnace v.*

1   *Sullivan*, 705 F.3d 1021, 1027 (9th Cir. 2013) (citing *Hudson v. McMillian*, 503 U.S. 1, 5

2   (1992)).

3          Additionally, to prevail on his Eighth Amendment claim for violation of his

4   constitutional rights due to Defendants Reynolds and Sandoval's deliberate indifference to

5   Plaintiff's medical needs, Plaintiff must prove by a preponderance of the evidence that (1)

6   he faced a serious medical need; (2) Defendants were deliberately indifferent to that

7   medical need; and (3) their failure to act caused him harm.  *Jett v. Penner*, 439 F.3d 1091,

8   1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

9          In their renewed Motion, Defendants contend (1) there is no evidence Defendants'

10  actions caused injury to Plaintiff; (2) there is no evidence Defendants possessed the

11  requisite mental state for an excessive force claim; and (3) Defendants are entitled to

12  qualified immunity.  (Mot. at 9–10).  The Court will address each argument in turn.

13                        **1.  Causation**

14         Defendants argue the jury lacked an evidentiary basis to conclude Defendants

15  Sandoval and Reynolds injured Plaintiff.  Dr. Christopher Johnson testified that Plaintiff

16  was diagnosed with suspected carpal tunnel syndrome following the accident.  Defendants

17  argue Plaintiff provided no evidence to support a causal connection between this diagnosis

18  and the handcuffing incident in May of 2017, or even that it was caused by trauma, as

19  opposed to a degenerative condition.  As a result, Defendants argue the jury award was

20  based on "speculation and guesswork."  (Mot. at 9).

21         The jury was given the following instruction as to causation, which will guide the

22  Court's analysis:

23         Plaintiff must also demonstrate that Defendants' conduct was the actionable
           cause of the claimed injury. To meet this causation requirement, the Plaintiff
24         must establish both causation-in-fact and proximate causation. "Causation-
           in-fact" requires the Plaintiff prove that his injury would not have occurred
25         but for Defendants' conduct. "Proximate cause" requires the Plaintiff to
           prove there was some direct relation between the injury asserted and the
26         injurious conduct alleged.

27                              * * *

28         Such causation can be established either by some kind of direct personal

                                    - 11 -

> participation in the deprivation or by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.

(Doc. 372 at 31).  Defendants' contention undercuts the evidence of his injuries caused by the heinousness of their actions which formed the basis for the jury verdict.  But it is undisputed Defendants used persistent and extreme force to handcuff Plaintiff, to no avail.  Plaintiff testified that immediately after the handcuffing incident with Defendants Reynolds and Sandoval, his wrist went numb.  Exhibits admitted at trial and Plaintiff's own testimony established that he was not in wrist pain before Defendants forced Plaintiff's wrists into a single pair of handcuffs.  During the incident, Plaintiff felt and heard a pop in his wrist.  Medical records and testimony from Nurse Rosario establish Plaintiff's wrist was swollen, lumpy, and tender to the touch, and that he experienced a pins and needles sensation.  Nurse Rosario testified in her subjective notes she documented in response to Plaintiff's HNR, which stated his wrist was swollen, in pain, and felt like it was asleep following the handcuffing incident where Plaintiff heard a pop in his wrist.  There was sufficient evidence in the record for the jury to find Defendants Reynolds and Sandoval injured Plaintiff.

## 2. Mental State

Defendants argue Plaintiff provided no evidence by which a reasonable jury could infer that Defendants Reynolds or Sandoval's force was used maliciously and sadistically.  Further, Defendants contend Plaintiff testified that Defendants "both ceased their brief attempts to restrain him in single handcuffs after he complained about it being painful." (Mot. at 10).

"Where no legitimate penological purpose can be inferred from a prison employee's alleged conduct…, the conduct itself constitutes sufficient evidence that force was used 'maliciously and sadistically for the very purpose of causing harm.'" *Giron v. Corrections Corp. of Am.,* 191 F.3d 1281, 1290 (10th Cir.1999) (quoting *Whitley v. Albers,* 475 U.S. 312, 320–21 (1986)).  "Rather than create additional elements for plaintiffs to satisfy, the use of these two terms emphasizes the cruelty inherent in harming an inmate for no other

1    reason than to cause harm." *Hoard v. Hartman*, 904 F.3d 780, 789 (9th Cir. 2018).

2        The actions of Defendants Reynolds and Sandoval, taken as true, support the jury's

3    verdict that they acted maliciously and sadistically in single cuffing Plaintiff.    It is

4    undisputed Defendants Reynolds and Sandoval were aware Plaintiff experienced pain

5    while being restrained in a single pair of handcuffs.  They were aware Plaintiff had a long-

6    standing SNO for alternative cuffing.  To comply with the SNO and prevent harm to

7    Plaintiff, Defendants historically double-cuffed Plaintiff or used side restraints.  On May

8    24, 2017, Defendants abandoned their customary practice and aggressively forced Plaintiff

9    into a single pair of handcuffs, to no avail.  Plaintiff endured the forced pressure crying out

10   in pain and discomfort.  Defendants Reynolds and Sandoval were aware they could

11   alleviate Plaintiff's suffering, yet proceeded to discipline him, subjected him to the same

12   persistent force allegedly on video (which was destroyed), and deprived him of immediate

13   medical assistance.  The jury could find Defendants' actions served no other purpose than

14   to inflict harm on Plaintiff.

15                           **3.  Qualified Immunity**

16       Defendants argue there is no clearly established caselaw applicable within the Ninth

17   Circuit sufficiently particularized to put all reasonable officials on notice that application

18   of single handcuffs under these circumstances constitutes excessive force under the Eighth

19   Amendment.  They are incorrect.

20       "It is well-established that overly tight handcuffing can constitute excessive force."

21   *Wall v. Cnty of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) (arrestee suffered nerve

22   damage as a result of continued restraint in tight handcuffs).  What is more, the Ninth

23   Circuit has held that excessively tight handcuffing can constitute excessive force, "but only

24   where a plaintiff claims to have been demonstrably injured by the handcuffs or where

25   complaints about the handcuffs being too tight were ignored." *Dillman v. Tuolumne Cnty.*,

26   2013 WL 1907379, at *8 (E.D. Cal. May 7, 2013) (citing *Wall*, 364 F.3d at 1109–12); *cf.*

27   *LaLonde v. County of Riverside*, 204 F.3d 947, 952, 960 (9th Cir. 2000) (arrestee

28   complained to officer who refused to loosen handcuffs); *Palmer v. Sanderson*, 9 F.3d 1433,

1434–36 (9th Cir. 1993) (arrestee's wrists were discolored and officer ignored his complaint), with *Hupp v. City of Walnut Creek*, 389 F.Supp.2d 1229, 1233 (N.D. Cal. 2005) (denying summary judgment in the absence of "evidence of a physical manifestation of injury or of a complaint about tight handcuffs that was ignored"); *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002) (refusing to find a constitutional violation where officers immediately acted after arrestee complained that handcuffs were too tight).  In *Dillman*, the court dismissed the plaintiff's claim because he "allege[d] no specific facts concerning the nature of any injuries suffered by [him], nor does [he] allege he complained about tight handcuffs and was ignored."  *Dillman*, 2013 WL 1907379, at *8.  Here, both criteria were present, and the jury found them to be true.

Further, the cases cited by Defendants are very different.  In *Cintron v. California Dept. of Corrections*, the court did not find a viable excessive force claim based on tight handcuffing in part because Plaintiff did not have "a valid medical order or chrono precluding corrections staff from handcuffing him from behind while in a standing position or, if there was such an order, that corrections staff was aware of and deliberately ignored it."  2012 WL 3132668, at *3 (E.D. Cal. July 31, 2012); *see also McCreary v. Massey*, 366 Fed. Appx. 516, 518 (5th Cir. 2010) (holding no excessive force or deliberate indifference claims when plaintiff did not have a front-handcuff pass).

Plaintiff had a history of medical orders for double handcuffs.  Defendants knew this.  Defendants may not rely on the mere technically of an expired SNO (that Plaintiff was actively trying to renew) to shield them from liability.  Further, the *Cintron* court failed to find an excessive force claim also because the plaintiff in that case did "not allege that he suffered or complained to corrections staff of pain from being cuffed in this manner or that it caused him pain or lasting injury."  *Cintron*, 2012 WL 3132668, at *3.  Here, Plaintiff repeatedly complained to Defendant Reynolds that he was hurting Plaintiff's wrist and shoulder, and he screamed in pain after the popping in his shoulder.

Moreover, Defendants cite to an unpublished case from the Eastern District of Arkansas to support their proposition that Moore was not handcuffed for a long enough

period of time to constitute excessive force.  *Evans v. Smith*, 2024 WL 1876182, at *2 (E.D. Ark. Mar. 31, 2024) (compiling Eighth Circuit caselaw regarding number of hours of restraint to establish excessive force claim).  But prolonged restraint is not the only manner in which an individual may be harmed by inappropriate handcuffing.  Here, the jury could have and did find Plaintiff's testimony of egregious pain sufficient.  Defendants Reynolds and Sandoval are not entitled to qualified immunity.  Nor are they entitled to judgment as a matter of law.

### B.  Defendants Espinosa and Akin (Count III)

To prevail on his Eighth Amendment claim for violation of his constitutional rights due to Defendants Akin and Espinosa's excessive use of force, Plaintiff must prove by a preponderance of the evidence that (1) Defendants used excessive force by slamming Plaintiff to the ground and then kneeing him the back; (2) Defendants acted maliciously and sadistically against Plaintiff for the purpose of causing harm, and not in a good faith effort to maintain or restore discipline; and (3) Defendants' actions caused Plaintiff harm.  Again, the *Hudson* factors are evaluated to determine whether force was excessive.  *Furnace v. Sullivan*, 705 F.3d 1021, 1027 (9th Cir. 2013) (citing *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

### i.    Defendant Espinosa

Defendant Espinosa seeks judgment as a matter of law for the same reasons as Defendants Reynolds and Sandoval, that (1) there is no evidence his actions caused injury to Plaintiff; (2) there is no evidence he possessed the requisite mental state for an excessive force claim; and (3) he is entitled to qualified immunity.  The Court will analyze each argument in turn.

### 1.  Causation

Defendant Espinosa argues the jury lacked an evidentiary basis to conclude he injured Plaintiff because Plaintiff did not provide specific testimony about his back pain and his medical providers did not testify that his subjective back pain originated from restraints initiated and caused by Defendant Espinosa.  Not so.

Plaintiff testified that while he was restrained, he was thrown to the ground, and knees were "dropped on [his] lower back." Five days after the incident, Nurse Practitioner Weigel treated Plaintiff for his acute back pain. Nurse Practitioner Weigel testified that Plaintiff complained of left wrist and lower back pain and that Plaintiff still could have suffered additional acute back pain from trauma despite a chronic condition like degenerative disc disease. Medical records support his injuries after the incident. There was sufficient evidence for the jury to find Defendant Espinosa's use of excessive force caused Plaintiff's back injury.

### 2. Mental State

Defendant Espinosa's argument hinges on a conclusory two-sentence assertion that his actions were not malicious and sadistic. But the evidence at trial suggests he used excessive force with no other purpose but to hurt Plaintiff. Defendant slammed him to the ground, dropped his knees on Plaintiff's lower back, all while Plaintiff was cuffed in belly chains. This constitutes sufficient evidence for the jury to find sadistic and malicious actions done for the purpose of causing harm. *See Cordell v. McKinney*, 759 F.3d 573, 585–86 (6th Cir. 2014) ("The record, read in Cordell's favor, shows that Deputy McKinney had Cordell handcuffed, in a submission hold, in a hallway inside the jail, with only correctional officers present. We have held in the past that 'striking a neutralized suspect who is secured by handcuffs is objectively unreasonable.'") (internal citation omitted); *id.* at 586 ("[W]e doubt that slamming a handcuffed and controlled prisoner headfirst into a concrete wall comports with human decency.").

### 3. Qualified Immunity

Defendant Espinosa argues he is entitled to qualified immunity because "[t]he Ninth Circuit has repeatedly held that a physical takedown and/or other types of force does not constitute excessive force when the prisoner has chosen not to comply with a prison official's orders." (Mot. at 13) (citing *Washington v. Cambra*, 165 F.3d 920 (9th Cir. 1998); *Bennett v. Cambra*, 125 F.3d 857 (9th Cir. 1997); *Drumgo v. Radcliff, Sgt.*, 661 F. App'x 758, 760 (3d Cir. 2016); *Thomas v. Greene*, 201 F.3d 441 (6th Cir. 1999); *Miles v.*

*Jackson*, 757 F. App'x 828, 830 (11th Cir. 2018)).  In response, Plaintiff failed to propound any caselaw to establish the unconstitutionality of Defendant Espinosa's caselaw. Nevertheless, the Court finds the cases cited by Defendant Espinosa are inapplicable to the facts here because Ninth Circuit caselaw has clearly established that an officer's physical takedown of a prisoner to the ground while applying body weight onto the prisoner constitutes excessive force when the prisoner was already handcuffed and not resisting. *See Smith v. Priolo*, 2012 WL 602899, at *7 (E.D. Cal. Feb. 23, 2012), *report and recommendation adopted*, 2012 WL 1077197 (E.D. Cal. Mar. 29, 2012).

While escorting the prisoner to the shower holding cell, correctional officers in *Smith* began pulling the prisoner's arms, slammed him to the ground face-first, placed him in restraints, and violently applied their body weight onto his backside, inflicting pain for two minutes.  *Smith*, 2012 WL 602899, at *1.  In denying the officers' qualified immunity claim, the court held, "[a] reasonable officer in [the defendants'] position would have known that it was unlawful to slam plaintiff to the floor and violently apply their body weight given that plaintiff was handcuffed and not resisting."  *Id.* at *7.  Similarly, in *Garcia v. Weiland*, the court rejected the defendants' qualified immunity claim when a prisoner was slammed to the ground, kicked, and punched, "all while he was restrained and did not pose any danger."  2023 WL 8099122, at *6, 9 (D. Nev. Nov. 1, 2023), *report and recommendation adopted*, 2023 WL 8084871 (D. Nev. Nov. 20, 2023).

### ii.   Defendant Akin

Defendant Akin seeks judgment as a matter of law on the basis that (1) there was no evidence he touched Plaintiff; (2) there was no evidence he had the requisite mental state for an excessive force claim; and (3) the jury could not have found him liable on supervisory liability grounds because supervisory liability was undisclosed.  The Court is persuaded and will grant Defendant Akin judgment as a matter of law.

As a preliminary matter, Defendant Akin argues "Plaintiff's introduction of a new theory of supervisory liability was unfairly prejudicial and should not have been permitted for the jury's consideration or when this Court was considering Defendants' Motion for

Judgment as a Matter of Law." (Mot. at 14). This is correct. Plaintiff's operative Second Amended Complaint against Defendant Akin alleges only a claim for direct force, not for supervisory liability. The issue of supervisory liability arose during trial in Defendants' Motion for Judgment as a Matter of Law. Significantly, the jury was never instructed on supervisory liability regarding Defendant Akin. (Doc. 372 at 33). Thus, to the extent the jury could have found Defendant Akin liable, it was only on direct excessive force theory. Consequently, the Court will analyze the evidence against Defendant Akin on a direct liability theory.

As stated, Plaintiff testified that Defendant Espinosa and two other officers slammed him against the wall. However, he could not identify the names of the two other officers but surmised that one of them might have been Defendant Akin because his name appeared in the incident report. (TR2 at 102). Plaintiff stated, "[Espinosa] and somebody else grabbed me and slammed me against the wall." (TR1 at 141). However, because Plaintiff was slammed from his back, and his face was against the wall, there was insufficient evidentiary foundation to establish that Plaintiff could perceive exactly how many people grabbed him, let alone who those people were. Further, on cross-examination, it is undisputed that Plaintiff admitted it might be possible that Defendant Akin never touched him during the incident. (TR2 at 102). And Defendant Espinosa testified that Defendant Akin did not touch Plaintiff at all but held a taser, which was never discharged, to his neck. (Doc. 386 at 39). "A judgment cannot be based upon guess, conjecture or speculation." *Orrill v. Prudential Life Ins. Co. of Am.*, 44 F. Supp. 902, 904 (N.D. Cal. 1942). "Inference cannot be built upon inference to establish a fact necessary to be proven." *Id.* The Court finds the jury's verdict with respect to Defendant Akin was rooted in little more than conjecture, speculation, and a pile of inferences.

Plaintiff appeals to the spoliation adverse inference instruction to rebut the lack of evidence against Defendant Akin. The jury instruction stated:

> If you find that the Defendants intentionally destroyed or failed to preserve
> video evidence relevant to Mr. Moore's claims that the Defendants knew or
> should have known would be evidence in this case, you may infer, but are

not required to infer, that this evidence was unfavorable to the Defendants.

(Doc. 372 at 42).  Plaintiff argues "the jury could easily have concluded that the video captured Defendant Akin's direct participation in the excessive force he used against Plaintiff."  This argument is unavailing because there was no video evidence of the November 13, 2017 incident to begin with.  At trial, Ruben Montano, a deputy warden in the Central Unit, testified that a video of the incident was never captured due to its spontaneous nature.  (Doc. 387 at 20).  The lost video evidence pertains to footage of Plaintiff after the incident as he was being transported to the medical unit.  (*Id.* at 21). Therefore, notwithstanding spoliation of the post-incident recording, a recording of the force at issue could not have been available to the jury as evidence of Defendant Akin's use of excessive force.  Defendant Akin is entitled to judgment as a matter of law.

### C.  Defendants Days and Munley (Count IV)

"The Eighth Amendment prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement."  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Accordingly, Plaintiff must prove by a preponderance of the evidence that (1) he faced a substantial risk of serious harm; (2) Defendants Munley and Days were deliberately indifferent to that risk, *i.e.*, Defendants knew of it and disregarded it by failing to take reasonable measures to address it; and (3) the acts of Defendants caused harm to Plaintiff.

Defendants contend (1) Plaintiff presented no evidence of sufficiently serious conditions or harm; (2) Plaintiff presented no evidence that Defendants possessed the requisite mental state for a deliberate indifference claim; and (3) Defendants are entitled to qualified immunity.  (Mot. at 15–16).  The Court will address each argument in turn.

### 1.  Harm

Defendants argue Plaintiff failed to demonstrate he faced a "substantial risk of serious harm" due to the unhygienic conditions he faced in enhanced security.

"Unquestionably, subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth

1  Amendment." *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314 (9th Cir.), *opinion amended*

2  *on denial of reh'g*, 75 F.3d 448 (9th Cir. 1995); *Turner v. Emerald Corr. Mgmt., LLC*, 2018

3  WL 1726246, at *7 (D.N.M. Apr. 6, 2018) ("[E]xposure to human waste 'evokes both the

4  health concerns emphasized in *Farmer* and the more general standards of dignity embodied

5  in the Eighth Amendment,' Plaintiff need not demonstrate that he became ill in order to

6  establish a claim for constitutionally inadequate living conditions.").

7        The evidence at trial did not present a readily apparent risk of harm to Plaintiff

8  stemming from the deprivation of certain clothing, hygiene items, and personal property.

9  Plaintiff testified that he had two caps on his teeth that required cleaning to prevent "the

10  rotting process."  However, Plaintiff did not testify to actual medical or dental injury

11  stemming from a lack of hygiene supplies and certain clothing for 14 days.  The jury could

12  have believed Plaintiff experienced discomfort, but he did not elicit sufficient evidence

13  regarding the type and magnitude of risks posed by the deprivation.

14                      **2.  Mental State**

15        Defendants Days and Munley further argue Plaintiff failed to demonstrate

16  Defendants acted with deliberate indifference—by knowing about, and consciously

17  disregarding, a substantial risk of serious harm to Plaintiff.

18        "Whether a prison official had the requisite knowledge of a substantial risk is a

19  question of fact subject to demonstration in the usual ways, including inference from

20  circumstantial evidence, and a factfinder may conclude that a prison official knew of a

21  substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S.

22  825, 842 (1994).  The evidence, viewed favorably to Plaintiff, shows that both Defendant

23  Days and Defendant Munley knew Plaintiff was without essential clothing and personal

24  hygiene items for days leading up to weeks.  Plaintiff testified to having numerous

25  conversations with Defendant Munley and one conversation with Defendant Days

26  requesting extra clothing, shampoo, soap, toothpaste, a toothbrush, shower shoes, etc.  The

27  evidence also shows they were reckless, at minimum, by failing to ensure he had access to

28  his entitlements in a timely manner. *See Farmer*, 511 U.S. at 826 ("Deliberate indifference

1 entails something more than negligence, but is satisfied by something less than acts or
2 omissions for the very purpose of causing harm or with knowledge that harm will result.
3 Thus, it is the equivalent of acting recklessly."). The jury was provided ample evidence
4 from which to conclude Defendants Days and Munley acted deliberately indifferent to
5 Plaintiff's substantial risk of serious harm by ignoring his pleas for extra clothing and
6 personal hygiene items.

### 3. Qualified Immunity

8 Defendants Days and Munley argue they are entitled to qualified immunity because
9 no particularized, well-established caselaw exists to support the conclusion that Plaintiff's
10 conditions of confinement violated his rights. They are correct.

11 The Eighth Amendment mandates the provision of adequate food, clothing, shelter,
12 sanitation, medical care, and personal safety for prisoners. *Wright v. Rushen*, 642 F.2d
13 1129, 1132 (9th Cir. 1981). Further, the prison conditions should be "compatible with 'the
14 evolving standards of decency that mark the progress of a maturing society.'" *Wright*, 642
15 F.2d at 113 (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958). However, in determining
16 whether a constitutional violation has occurred, "[t]he circumstances, nature, and duration
17 of a deprivation of these necessities must be considered." *Johnson v. Lewis*, 217 F.3d 726,
18 731 (9th Cir. 2000). "More modest deprivations can also form the objective basis of a
19 violation, but only if such deprivations are lengthy or ongoing." *Id.*; *Anderson v. County
20 of Kern*, 45 F.3d 1310, 1314, *as amended*, 75 F.3d 448 (9th Cir. 1995) ("[A] lack of
21 sanitation that is severe or prolonged can constitute an infliction of pain within the meaning
22 of the Eighth Amendment."); *Norwood v. Vance*, 591 F.3d 1062, 1070 (9th Cir. 2010)
23 (stating that a temporary denial of a basic necessity does not violate the Eighth
24 Amendment); *Chick v. Lacey*, 2014 WL 6819904, at *5 (E.D. Cal. Dec. 2, 2014) (no Eighth
25 Amendment violation for temporary deprivations of showers, a toothbrush, toothpaste, and
26 dentures and stating the deprivations were not "sufficiently grave"); *Balla v. Bd. of
27 Corrections*, 656 F. Supp. 1108, 1118 (D. Idaho 1987) (no Eighth Amendment violation
28 where "individual inmates may have been inconvenienced by delays in providing supplies"

with "no substantial evidence that personal hygiene supplies were being withheld for any improper purpose"); *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) (no Eighth Amendment violation when plaintiff was deprived of (1) toilet paper for five days and (2) soap, toothbrush, and toothpaste for ten days; and lived in a filthy, roach-infested cell, because the deprivations were "temporary and affected only one inmate").

Courts have held that the denial of personal hygiene supplies such as toothbrushes, toothpaste, and soap for a prolonged period of time may constitute a serious deprivation of basic needs. *See Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) (deprivation of toothbrush and soap for six months was sufficiently serious); *Bd. v. Farnham*, 394 F.3d 469, 483–84 (7th Cir. 2005); *Flanory v. Bonn*, 604 F.3d 249, 255–56 (6th Cir. 2010) (holding that allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health problems did not constitute a temporary inconvenience and were sufficient to state an Eighth Amendment claim).

Conversely, a short-term denial of a toothbrush or toothpaste falls short of constituting such a deprivation. *See, e.g., Matthews v. Murphy*, 1992 WL 33902, at *4 (9th Cir. 1992) (holding that an inmate's allegations that he was deprived of a towel, toothbrush, toothpowder, comb, soap, and other personal hygiene items for approximately 34 days did not rise to the level of a constitutional violation); *Crump v. Janz*, 2010 WL 2854266, at *4 (W.D. Mich. July 19, 2010) (concluding that the denial of toothbrush and toothpaste for 34 days constitutes a mere temporary inconvenience); *Fernandez v. Armstrong*, 2005 WL 733664, at *5–6 (D. Conn. Mar. 30, 2005) (holding that the denial of toothpaste, toothbrush, shampoo and soap for 16 days did not rise to the level of an Eighth Amendment violation where plaintiff did not allege any physical effects or injuries); *Holder v. Merline*, 2005 WL 1522130, at *6 (D.N.J. June 27, 2005) (finding that a three-week deprivation of a toothbrush and sneakers did not implicate the Eighth Amendment where no physical effects resulted); *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (holding that a 69-day denial of toothpaste may constitute a constitutional deprivation if plaintiff had to be treated by a dentist for bleeding and receding gums and tooth decay).

Further, a lack of adequate clothing may constitute a constitutional deprivation under extreme weather or temperature conditions. *Walker v. Sumner*, 14 F.3d 1415, 1421 (9th Cir. 1994). "*Walker* suggested that in determining whether inadequate clothing rises to the level of a constitutional violation, a court must consider the weather conditions at the time, any pain inflicted by the clothing restriction, and the clothing that is in fact available to the inmate at the time." *Hendrix v. Nevada*, 2018 WL 5289495, at *14 (D. Nev. Sept. 18, 2018), *report and recommendation adopted*, 2018 WL 5289829 (D. Nev. Oct. 24, 2018) (no constitutional violation where plaintiff's claim of denial of shoes, socks, and undergarments despite winter weather did not inflict ascertainable pain); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (affirming district court's decision that inmates exposed to harsh winter conditions without proper winter clothing may suffer from infliction of pain that are without penological justification in violation of Eighth Amendment); *Palmer v. Johnson,* 193 F.3d 346 (5th Cir. 1999) (inmate was forced to overnight outdoor confinement having to withstand strong winds and cold without the protection of jackets or blankets; court found that, although the degree to which the temperature actually fell was relevant to a conclusive determination, the inmate's exposure to the elements arising out of this incident could have risen to the level of a constitutional deprivation); *Balla*, 595 F.Supp. at 1566, 1575 (finding a constitutional violation when prison officials did not provide clothing that was sufficient to guard against Idaho's winter temperatures).

The evidence established at trial shows little more than a temporary deprivation of personal hygiene items and a deprivation of clothing leading to slight or no risk of serious harm. Plaintiff received clothing items four days after speaking with Defendant Days and the rest of his property and hygiene supplies one week later. Plaintiff did not present evidence of inclement temperature conditions such that a lack of additional clothing beyond a shirt and a pair of boxers caused him harm. He did not develop, nor risk developing, medical conditions related to the repeated wearing of the shirt and boxers for consecutive days. The facts presented here are analogous to caselaw finding no

constitutional violations based on a short-term deprivation of hygiene items. Thus, Defendants Days and Munley are entitled to qualified immunity.

## II.    New Trial

In the alternative, Defendants argue the Court should order a new trial because the parties stipulated to the bifurcation of punitive damages in the Amended Joint Proposed Pretrial Order, but punitive damages were not bifurcated in the jury verdict. Specifically, the Amended Joint Proposed Pretrial Order stated, "punitive damages should be bifurcated for liability and damages, such that if the jury finds any of the Defendants liable for punitive damages, Plaintiff would then (and only then) be permitted examination on the Defendants' finances for the purpose of determining the amount to be awarded." (Mot. at 16). Defendants assert that in reliance upon these evidentiary constraints, they could not and did not submit evidence about their financial conditions, ability to pay, and what amounts of such an award would financially devastate them. Because the liability and punitive damages Verdict Forms were not bifurcated, according to Defendants, the jury lacked any—let alone substantial—evidence to assess the amount of punitive damages they awarded.

Defendants are incorrect. Even though both verdict forms were submitted to the jury at the same time, the jury had substantial evidence to assess the amount of punitive damages under the jury instructions Defendants agreed to. Specifically, the punitive damages jury instruction stated the following with respect to calculating punitive damages:

> If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct including whether the conduct that harmed Mr. Moore was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case. You may not, however, set the amount of any punitive damages in order to punish the defendant for harm to anyone other than Mr. Moore in this case.

(Doc. 372 at 41). The jury was presented with a clear basis for determining the

1    amount of punitive damages it could award Plaintiff. No part of the instructions called the

2    jury to consider Defendants' financial conditions and their ability to pay. Thus, even if

3    Defendants presented evidence regarding their financial conditions, the Instructions do not

4    mandate a consideration of such evidence.

5         Of greater significance, Defendants did not object to the content of the punitive

6    damages jury instructions when the Court discussed with counsel and obtained approval

7    from counsel regarding each instruction. Nor did they raise the issue of bifurcation at all

8    during trial—either before the jury verdict was submitted or after. Therefore, any omission

9    was invited by Defendants by not raising it at trial and thereby                    agreeing

10   on the jury instructions without objection to the substance. *United States v. Magdaleno*,

11   43 F.4th 1215, 1220 (9th Cir. 2022) ("For purposes of the invited error doctrine, a

12   defendant invites error when he induces or causes the error. The paradigmatic example of

13   inducing or causing error arises when the defendant himself proposes allegedly flawed jury

14   instructions." (cleaned up)); Fed. R. Civ. P. 51 ("A court may consider a plain error in the

15   instructions that has not been preserved as required by Rule 51(d)(1) if the error affects

16   substantial rights.").

17        Further, evidence related to financial condition is not a requirement for awarding

18   punitive damages. *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 806 (9th Cir. 2018)

19   ("Under federal law, 'ability to pay is of some importance' in assessing the propriety of a

20   punitive damages award but it is not dispositive.") (quoting *Tri-Tron Int'l v. Velto*, 525

21   F.2d 432, 438 (9th Cir. 1975). Although Defendants do not argue that the punitive damages

22   award is excessive (merely that there was no evidence related to financial condition), the

23   Court notes that punitive damages awards that are within a single digit ratio of the

24   compensatory award are routinely upheld as compliant with due process requirements.

25   *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1044 (9th Cir. 2003).[2] For this reason,

26   the alternative Motion for New Trial is denied.

27   **III.    Remittitur**

28   _____

[2] It is noteworthy that Defendants did not proffer in this Motion the relevant admissible financial evidence they would have offered at trial.

Defendants argue the remaining jury awards should be remitted because the jury was presented with no evidence to quantify Plaintiff's injuries to his wrist and back. According to Defendants, the fact that the jury awarded identical sums against Defendants Reynolds, Sandoval, Espinosa, and Akin despite being involved in distinct incidents resulting in distinct injuries means "the jury could only have based its compensatory damage computations on nothing other than speculation and guesswork." (Mot. at 18). Defendants' contention is unavailing.

The court "must uphold a jury's damages award unless the amount is 'clearly not supported by the evidence, or only based on speculation or guesswork.'" *Guy v. City of San Diego*, 608 F.3d 582, 585 (9th Cir. 2010); *Williams v. Gaye*, 895 F.3d 1106, 1128 (9th Cir. 2018) ("We afford 'great deference' to a jury's award of damages[.]"). Courts afford juries wide latitude in awarding compensatory damages because "there cannot be any fixed measure of compensation for the pain and anguish of body and mind, nor for the permanent injury to health and constitution[.]" *W. Gas Const. Co. v. Danner*, 97 F. 882, 890 (9th Cir. 1899) ("It is sufficient to show to the jury the extent of the injury, and the amount of the verdict must be determined by the jury in the exercise of their sound and deliberate judgment; and it necessarily follows that, unless the amount of the verdict is such as to clearly indicate that it was given under passion or prejudice, it should be sustained.").

Defendants failed to establish the jury award was a byproduct of passion or prejudice. The jurors were instructed that they could award compensatory damages for the (1) nature and extent of the injuries, (2) disability or loss of enjoyment of life experienced, and any probability of future harm, (3) mental, physical, and emotional pain, and (4) wages. (Doc. 372 at 39). Plaintiff testified that prior to his time in prison he was paid an hourly rate of $9.50 an hour as a diesel mechanic. (TR2 at 70). This number formed the basis for the jury's calculations of compensatory damages, wherein $7,500 roughly translates to 20 weeks of Plaintiff's pre-incarceration salary.

Defendants assert Plaintiff's testimony concerning his work limitations relate only to his wrist injury, not his back injury, and that Plaintiff failed to provide evidence that his

back injury would prevent him from being gainfully employed. (Mot. at 18). This is incorrect. Plaintiff testified he still experiences wrist pain. (TR2 at 72). In response to being asked about back pain, he testified "I always have pain. I have a hard time standing and everything, and laying down at night, but they're not going to do nothing, so they're not -- I need that money to eat, let alone keep putting them in and not getting nothing out of it." (*Id.*). Plaintiff testified he expects to be in pain for the rest of his life because he has not found any medications or anything else that helps with his pain. While Plaintiff testified his wrist pain is exacerbated by strain such as working out, he described his back pain as "constant." (*Id.* at 73). Thus, the jury had a sufficient basis for its award of compensatory and punitive damages against Defendants Reynolds, Sandoval, and Espinosa. Accordingly, the alternative Motion for Remittitur is denied.

## IV.    Attorneys' Fees and Costs

Also before the Court is Plaintiff's Motion for Attorneys' Fees and Costs (Doc. 389). Plaintiff seeks attorneys' fees in the amount of $150,000 proportional to the judgment amount and costs in the amount of $7,061.80. Because time related to unsuccessful claims is not recoverable, *Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1169 (9th Cir. 2024), the Court will order supplemental briefing on the issue of attorneys' fees and costs in light of the judgment award reduction.

*            *            *

Accordingly,

**IT IS ORDERED** Defendants' Motion for Judgment as a Matter of Law, or Alternatively, for a New Trial or Remittitur (Doc. 390) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The Motion for Judgment as a Matter of Law is **GRANTED** as to Defendants Akin, Days, and Munley and **DENIED** as to Defendants Reynolds, Sandoval, and Espinosa.

2. The alternative Motion for New Trial is **DENIED**.

3. The alternative Motion for Remittitur is **DENIED**.

1    **IT IS FURTHER ORDERED** Plaintiff's Motion for Attorneys' Fees and Costs

2    (Doc. 389) is **DENIED WITHOUT PREJUDICE**.  Plaintiff shall refile an updated fee

3    motion consistent with this Order within 14 days of this Order.

4    **IT IS FURTHER ORDERED** the Judgment entered on July 26, 2024 (Doc. 381)

5    is **VACATED**.

6    **IT IS FURTHER ORDERED** the Clerk of Court shall enter a new judgment as

7    follows:

8    Judgment is entered in favor of Defendants Levias Akin, Panann Days, and

9    Paul Munley, and against Defendants Paul Reynolds, Marcos Sandoval, and

10   Matthew Espinosa as follows:

11   Paul Reynolds in the amount of $7,500.00 in compensatory damages

12   and $20,000.00 in punitive damages;

13   Marcos Sandoval in the amount of $7,500.00 in compensatory

14   damages and $20,000.00 in punitive damages;

15   Matthew Espinosa in the amount of $7,500.00 in compensatory

16   damages and $20,000.00 in punitive damages

17   Dated this 27th day of January, 2025.

18

19

20   _____

     Honorable Roslyn O. Silver
     Senior United States District Judge

21

22

23

24

25

26

27

28